AMERICAN MEDICAL ASSOCIATION, etc., et al., Plaintiffs-Appellees,

v.

Caspar W. WEINBERGER, Defendant-Appellant.

No. 75-1547.

United States Court of Appeals, Seventh Circuit.

Argued July 10, 1975.

Decided July 22, 1975.

Samuel K. Skinner, U. S. Atty., Gary L. Starkman, Asst. U. S. Atty., Chicago, Ill., Rex E. Lee, Asst. Atty. Gen., David M. Cohen, Atty., Civ. Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

Newton N. Minow, Robert D. Mc-Lean, Jack R. Bierig, Sidley & Austin, Bernard D. Hirsh, Chicago, Ill., for plaintiffs-appellees.

Stanton J. Price, Patricia A. Butler, Los Angeles, amicus curiae, National Health Law program.

Before FAIRCHILD, SWYGERT and BAUER, Circuit Judges.

BAUER, Circuit Judge.

This cause comes before the Court on the expedited appeal of defendant, Caspar W. Weinberger, the Secretary of the Department of Health, Education and Welfare. Plaintiffs, the American Medical Association and certain patients, beneficiaries of Medicare and Medicaid programs, sued H.E.W. seeking to enjoin the enforcement of certain changes in the regulation promulgated by the Secretary under the Medicaid[1] and Medicare[2] programs.

1. Medicaid, 42 U.S.C. § 1396 *et seq.*, is the program of medical assistance to indigents who are recipients of either aid to families with dependent children ("AFDC", 42 U.S.C. § 601 *et seq.*) or Supplemental Security Income program for aged, blind or disabled poor ("SSI", 42 U.S.C. § 1381 *et seq.*).

Medicaid is financed by state and federal funds, but administered by each state. Although the federal law prescribes requirements for each state to receive federal money, each state has considerable discretion in designing the contours of its program; the categories of beneficiaries which it may cover, the benefits for which it may pay, the qualifications which it may establish for provider eligibility to participate and the welfare eligibility levels.

Under 42 U.S.C. § 1396b(g)(1)(c) the Secretary of H.E.W. is authorized to promulgate regulations. The terms of the provision authorize the Secretary (a) to require review of the necessity for admission of each patient; (b) to require that this review shall be conducted by medical "and other professional personnel"; and (c) to require that this review occur with such frequency as the Secretary may prescribe.

2. Medicare, 42 U.S.C. § 1395 *et seq.*, is a nationally uniform program of health insurance for the aged, and since 1973, the disabled. It is completely financed and administered at the federal level by the Social Security Administration and certain insurance carriers, called "fiscal intermediaries", which act as the Secretary's agents to pay institutional providers.

The new changes, which were scheduled to become effective on July 1, 1975, revise the system of utilization review, i. e., review of the need for hospitalization, utilized in the Medicare and Medicaid programs so as to provide for the review, by a committee composed of physicians and other professional personnel, within twenty-four hours of the admission to a hospital of a Medicare or Medicaid patient in order to determine whether the admission is medically necessary. If the committee decides that the admission is not necessary, the hospitalization may continue, but the Secretary will not reimburse the provider of services for the hospital stay beyond the third day after notification of the decision of the committee. If the committee decides that the hospitalization is necessary, the Secretary will reimburse the hospital, subject to later review, for the services rendered for so long as the beneficiary remains hospitalized.[3]

As its financing derives from payroll deductions, its eligibility depends generally upon previous qualifying employment.

Medicare is divided into two parts: Part A, the hospital insurance program, pays for hospital, nursing home and home nursing services; Part B, the supplementary medical insurance program, pays for physician's services, laboratory and X-ray services, other outpatient services such as ambulance services and medical equipment. Although Part A is financed by payroll deductions contributed to the Social Security Trust Fund, and becomes automatically available to social security beneficiaries who turn 65 or have been disabled for 24 months, Part B requires disabled or aged persons to enroll in the program and pay a monthly premium, which is matched by a contribution from the federal treasury. There is no means test for Medicare beneficiaries. They need only be eligible for social security benefits.

The Act specifically provides that the Secretary may apply "the utilization review procedures" established pursuant to the Medicaid Act to the Medicare program "to the extent that he deems it appropriate" if he determines that the Medicaid procedures are "superior in their effectiveness" to those prescribed under the Medicare program. 42 U.S.C. § 1395x(k) (1970) (Supp. III).

3. The new regulations as published in final form provide that each state plan must contain requirements to the effect: (a) that each hospital providing inpatient services under the state

After a hearing, the trial court issued a preliminary injunction enjoining the enforcement of the regulations on the ground that the regulations may be in excess of the Secretary's statutory authority and may unlawfully interfere with the doctor-patient relationship. The trial judge took the position that "the practical effect of the regulation is to deny admission, even if the terms of the regulations do not." The opinion concluded:

> "The wiser exercise of this court's discretion is the issuance of a preliminary injunction pending disposition on the merits.
>
> The risk of the irreparable injury to the health of patients outweighs any hardship to defendant."

■ Since an application for a preliminary injunction is addressed to the sound discretion of the trial court, appellate review is extremely limited. *Hulburt Oil and Grease Co. v. Hulburt Oil and Grease Co.*, 346 F.2d 260 (7th Cir.), *cert. denied*, 382 U.S. 835, 86 S.Ct. 78, 15 L.Ed.2d 77 (1965); *Scherr v. Volpe*, 466 F.2d 1027 (7th Cir. 1972).

Thus the only question before this tribunal is whether the trial court committed an abuse of discretion in issuing a preliminary injunction. In *Particle Data Laboratories, Inc. v. Coulter Electronics, Inc.*, 420 F.2d 1174, 1178 (7th Cir. 1969), this Court articulated the standard for determining whether a trial judge had abused his discretion:

> " 'Generally, an appellate court may set aside a trial court's exercise of discretion only if the exercise of such discretion could be said to be arbitrary.' '[D]iscretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion' " (citations omitted).

■ The central issue in this litigation is not the principle of utilization review [4] per se. Indeed, plaintiffs' principal witness admitted that a decision by a utilization review committee made after a retrospective review, a review which occurs at some point (days, weeks, or months) after admission, does not affect a doctor's practice of medicine or interfere with the doctor-patient relationship. Plaintiffs recognize that some form of review is necessary to prevent unscrupulous doctors from admitting patients who do not require hospitalization.[5] How-

plan possess a written facility utilization review plan; (b) that the facility's plan provides for a staff committee of the facility composed of two or more physicians with participation of other professional personnel; (c) that the committee select or develop written criteria to assess the necessity for admission of individuals to the hospital; (d) that the necessity for admission of an individual be reviewed within one working day; (e) that where the committee has reason to believe that the admission is not medically necessary, it shall so notify the attending physician and afford him an opportunity to present his views; (f) that if, after the physician presents his views, at least two physician members of the committee determine that admission is not necessary, notification shall be transmitted to the specified individuals and organizations; (g) that a final decision concerning the necessity of the admission be made within two working days of the admission. Regulations of the Secretary provide for Medicare or Medicaid reimbursement for the period extending from the date of ad-

mission to three days subsequent to the adverse decision, if any, of the committee.

4. A recent decision by a three judge court in this Circuit sustained the constitutionality of the Professional Standards Review Organization (PSRO) Act, 42 U.S.C. § 1320c, in holding that the Constitution does not prohibit Congress from establishing a general statutory scheme for physician review of medical treatment given to Medicare and Medicaid patients. See *Association of American Physicians & Surgeons v. Weinberger*, 395 F.Supp. 125 (N.D.Ill.1975).

5. In the brief of appellants and the brief of amicus curiae, National Health Law Program, the argument is made that many hospital admissions are not medically necessary. Indeed there are a number of authorities to demonstrate the following: (1) the rate of hospital admissions responds directly to hospital bed availability. (2) The volume of surgery performed is proportional to the prevalence of surgeons in the area. For instance surgery is

ever, plaintiffs contend that the new regulations which mandate immediate review of the doctor's decision to admit a patient have the effect of allowing H.E.W. to interfere with a function and duty traditionally reserved to qualified medical professionals. Defendant responds by stating that the procedures by which the federal government determines whether or not it will make reimbursement do not result in an interference with the practice of medicine. As a general principle the Secretary is correct in making such an argument. See *Johnson's Professional Nursing Home v. Weinberger,* 490 F.2d 841 (5th Cir. 1974); *Association of American Physicians & Surgeons v. Weinberger,* 395 F.Supp. 125 (N.D.Ill.), decided May 8, 1975 (three judge court). Yet these new regulations may have the effect of directly influencing a doctor's decision on what type of medical treatment will be provided, thus directly interfering with the practice of medicine. Whether or not the regula-

tions have such an impact, which would be in violation of the various statutes[6], and, perhaps amount to unconstitutional conduct[7], is not a question for us to decide at this time. Our decision now is simply based on examining the record to see if the trial court properly exercised its discretion in balancing the following factors: the likelihood of irreparable harm to plaintiffs if an injunction does not issue; the probability of success or failure of the suit; the potential for damage or inconvenience in light of the public interest.[8]

The record in this case reveals that a decision not to issue a preliminary injunction may have resulted in irreparable injury to patients and physicians. The testimony of appellees' witnesses, Dr. Frank Jirka and Dr. Risher Watts, indicates that the challenged regulations may cause physicians to refrain from hospitalizing patients who they believe should be hospitalized—to the detriment of the health of such patients. Appel-

more popular in major urban areas which contain a higher percentage of surgeons in the medical community. The number of per capita surgeries performed in this country is twice that performed in England. (3) Hospital admissions greatly increased when Medicaid and Medicare were enacted in 1965. (4) The medical necessity of certain minor surgery, such as tonsillectomies, is questionable in a majority of cases. See Roemer, "Bed Supply and Hospital Utilization: A National Experiment", 35 *Hospitals: J.A.H.A.* No. 21, p. 36 (Nov. 1, 1961); Bunker, "Surgical Manpower: A Comparison of Operations & Surgeons in the U.S. and England and in Wales", 135 (1970). Bolande, "Ritualistic Surgery—Circumcision and Tonsillectomy", 280 *New England Journal of Medicine,* 591, 593 (1969). Obviously the authorities cited only represent one type of viewpoint or attitude in the medical profession. However, no one can seriously dispute the reality of today's health service economics. Principles normally associated with the operation of the free market, such as supply and demand, do not apply in the delivery of health services. Consequently without some form of utilization review certain members of the medical profession could unfairly take advantage of the system as it now operates.

6. 42 U.S.C. § 1395 prohibits government action which interferes with the practice of medicine. The statute, in relevant part, provides:

"Nothing in this subchapter shall be construed to authorize any Federal officer or

employee to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided . . . or to exercise any supervision or control over the administration or operation of any . . . institution, agency, or person [providing health services]."

7. In *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), the Supreme Court concluded that requiring approval of a licensed physician's medical decisions violates the constitutional rights of both physicians and patients. Also see *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Rosen v. Louisiana State Board of Medical Examiners,* 380 F.Supp. 875 (E.D.La.1974), aff'd 419 U.S. 1098, 95 S.Ct. 767, 42 L.Ed.2d 795 (1975); *Nyberg v. City of Virginia,* 495 F.2d 1342 (8th Cir. 1974), cert. denied 419 U.S. 891, 95 S.Ct. 169, 42 L.Ed.2d 136. Whether the *Doe* decision and the other cases cited are really applicable to the instant case is a question that can only be answered after trial.

8. The test for deciding whether a preliminary injunction is proper is well established. See *Bath Industries v. Blot,* 427 F.2d 97 (7th Cir. 1970); *Doeskin Products Inc. v. United Paper Co.,* 195 F.2d 356 (7th Cir. 1952); *Seagram Distillers Corp. v. New Cut-Rate Liquors, Inc.,* 221 F.2d 815 (7th Cir.), cert. denied 350 U.S. 828, 76 S.Ct. 59, 100 L.Ed. 740 (1955).

lant's witnesses admitted that the regulations at issue would affect medical judgments made by attending physicians. All medical witnesses testified that it was frequently impossible to develop sufficient diagnostic data within twenty-four hours to justify hospital admissions. The only evidence which appellant presented in support of his position was statements by two physicians, neither of whom regularly treat patients, that the regulations might be enforced in a manner consistent with their views of proper medical care and health administration.

On this point the district court found:

> "There is no indication that an over-65 indigent recipient of Medicare or Medicaid, if not admitted under these programs, could otherwise pay for the hospitalization prescribed by the attending doctor. If a patient who cannot pay cannot as a result of the regulations be hospitalized when diagnosis is unclear, the potential injury to the patient's health may be irreparable."

The regulations might also harm physicians whose ability to provide effective treatment will be severely handicapped by the loss of patient confidence which must inevitably accompany a communication, within twenty-four hours, to a hospitalized patient that, contrary to what his attending physician had said, hospitalization is unnecessary.

█ In contrast to the substantial risk of irreparable injury to appellees posed by the challenged regulations, the damage to appellant from the preliminary injunction is minimal. Medicare and Medicaid have been law since 1965. In this ten-year period, these programs have functioned without the drastic, across-the-board, twenty-four hour admission review system mandated by the challenged regulations. It can hardly be said, therefore, that appellant will suffer irreparable harm in the period that the preliminary injunction is in effect to preserve the status quo until the complex issues raised by this case can be disposed of in an orderly and judicious fashion.

These regulations were first issued as proposals in January of 1974. They were studied for nearly eleven months until November 29, 1974, when they were finalized. At that time, they were to become effective on February 1, 1975. Subsequently, the Secretary voluntarily postponed their effective date until July 1, 1975. In effect, the preliminary injunction continues the postponement voluntarily effected by appellant. In these circumstances it hardly behooves the Secretary to claim that the preliminary injunction is causing him irreparable injury.

Indeed if the Secretary believed that a delay in the implementation of the regulations would cause serious harm he could have accepted the trial court's offer to hold a full trial on the merits as soon as possible.

█ There is no doubt that there is a substantial public interest question involved in this litigation. The regulations play an integral and critical role in two nationwide programs of substantial magnitude. The regulations were adopted only after the most serious study, including consideration of thousands of comments submitted by plaintiffs and other interested parties. The injunction places in limbo the efforts of H.E.W. to foster the establishment of Professional Service Review Organizations (PSRO's) across the country. Nevertheless we think the trial court correctly understood these factors when the judge stated in his opinion that:

> "A preliminary injunction will . . prevent the expenditure now of federal funds on a program that ultimately may be declared invalid. And if the Secretary should prevail on the merits, he can thereafter proceed to enforce the regulations with confidence in their validity."

Furthermore, the public interest demands that any assertion of constitutional and legal rights, quite apart from the rights of the magnitude at issue in this proceeding, be adjudicated in an orderly, principled and judicious manner. A re-

view of the proceedings in the district court reveals that the court vigorously attempted to reach the merits of this case and that appellant repeatedly resisted all efforts to resolve the merits expeditiously. The public interest requires that district courts be permitted to utilize interim injunction relief in a manner which enables those courts to scrutinize administrative action in an orderly and lawful manner.

■ Finally we must review the question of whether or not the record supports the contention by plaintiffs that they will probably succeed on the merits. Plaintiffs have attempted to demonstrate that there is a substantial likelihood that the regulations will be held to violate the Constitution, the Social Security Act, and the Administrative Procedure Act. We have reviewed the extensive arguments as well as defendant's excellent presentation. At this time, however, any comments upon the substantive merits of plaintiffs' case would be inappropriate. Once again our review is limited to only deciding whether the trial judge abused its discretion. Unfortunately we believe that the trial court did err in refusing to admit evidence offered by the Secretary which would explain the reasons for the regulations and the data upon which his decision to promulgate the regulations was premised. But we do not believe that the exclusion of such evidence amounted to an abuse of discretion warranting a reversal of the order granting a preliminary injunction. We believe that at a trial on the merits such evidence would be admissible and urge the court to consider it at that time.

■ A reading of the arguments addressed to the substantive question of whether the new regulations violate the constitutional rights of patients and doctors shows a collection of very substantial and difficult legal questions. The trial court admitted that plaintiffs' contentions raised difficult issues. However, simply because the trial court was candid in its opinion does not mean the court was convinced that plaintiffs could not succeed on the merits. Our review of the case, as presented thus far, leaves us with the impression that plaintiffs could ultimately succeed. Yet, a full trial on the merits, wherein the Secretary is permitted to introduce sufficient evidence to present a viable defense of the new regulations, may lead to a different conclusion.

Because of the nationwide importance of the issues here involved, the matter will undoubtedly be given an expeditious trial date as was repeatedly urged by the trial court prior to the hearing on the preliminary injunction.

By our decision today we do not intend to express any view on the substantive merits of plaintiffs' claim. We merely hold that at this state of the lawsuit plaintiffs have presented sufficient evidence to warrant a preliminary injunction. Accordingly we affirm the trial court's granting of that injunction.

Affirmed.

SWYGERT, Circuit Judge (concurring).

I agree that the order of the district court granting a preliminary injunction should be affirmed, and I concur in the order affirming except for the statement: "Our review of the case, as presented thus far, leaves us with the impression that plaintiffs could ultimately succeed." I am somewhat more skeptical about their chances of success after a full exploration of the merits.