EMMA G. and Virginia W., on their own behalf and on behalf of all others similarly situated, Dr. Roy Wood and Dr. Calvin Jackson, on their own behalf and on behalf of all others similarly situated, and Orleans Women's Clinic and Clinical Leasing Services, Inc., d/b/a Delta Women's Clinic

v.

Edwin W. EDWARDS, Governor of the State of Louisiana, William Stewart, M.D., Secretary of the State of Louisiana Health and Human Resources Administration, and Charles B. Odom, M.D., Richard Miller, M.D., and Ike Muslow, M.D., Members of the Louisiana State Board of Medical Examiners, all of the above in their Individual and official capacities.

Civ. A. No. 77–1342.

United States District Court,
E. D. Louisiana.

July 11, 1977.

Jane L. Johnson, Guy M. Huard, Jack M. Stolier, New Orleans Legal Assistance Corp., New Orleans, La., for plaintiffs Emma G. and Virginia W.

Janet Benshoof, American Civil Liberties Union Foundation, New York City, for plaintiffs Dr. Roy C. Wood, Dr. Calvin Jackson, Delta Women's Clinic and Orleans Women's Clinic.

R. James Kellogg, American Civil Liberties Union of Louisiana, Inc., New Orleans, La., for plaintiffs.

Lawrence L. McNamara, Adams & Reese, New Orleans, La., for defendants Charles B. Odom, M.D., Richard Miller, M.D., and Ike Muslow, M.D., Members of the Louisiana State Board of Medical Examiners.

William J. Guste, Jr., Atty. Gen., Warren E. Mouledous, First Asst. Atty. Gen., Joseph W. Thomas, Asst. Atty. Gen., Sam L. Levkowicz, Staff Atty., Louis M. Jones, Asst. Atty. Gen., Dept. of Justice, State of Louisiana, New Orleans, La., for defendants Edwin W. Edwards, Governor of the State of Louisiana and William Stewart, M.D., Secretary of the State of Louisiana Health and Human Resources Administration.

HEEBE, Chief Judge.

This suit was originally filed in order to enjoin the Louisiana Health and Human Resource Administration from denying Medicaid payments for therapeutic abortions performed outside of a hospital and to enjoin the State Board of Medical Examiners from enforcing LSA–R.S. 37:1285(9) against physicians who perform abortions. This section provides that:

> "The board may refuse to issue, or may suspend or revoke any license or permit, or impose probationary or other restrictions on any license or permit issued under this Part for the following causes:

> "(9) Performing or assisting in the performance of, or procuring or abetting in the procuring of an abortion or termination of pregnancy: when the abortion or termination of pregnancy is contrary to or unnecessary in the best medical judgment of that physician; or

when the operating physician lacks the training and expertise to perform the procedure; or, when the procedure is performed outside of a hospital licensed by the Louisiana Health and Human Resources Administration; or its successor; . . . "

The plaintiffs contend that LSA–R.S. 37:1285(9) is, on its face, unconstitutional in its entirety. The suit is before us on plaintiffs' request for a permanent injunction.

Although, as previously stated, one of the two issues raised by the plaintiffs was the restriction on medical payments solely for therapeutic abortions to those performed in a hospital, it would appear that this issue has been stipulated away. The following stipulation has been entered into and filed into the record:

> It is the policy of the Louisiana Department of Health and Human Resources that payment, under Title XIX of the Social Security Act, is made on behalf of Title XIX recipients for medically necessary procedures performed by qualified Title XIX medical vendors. Therapeutic abortions are recognized as medically necessary procedures, and payment for therapeutic abortions is made, under Title XIX regulations, to any qualified medical vendor.

> "Requests for payment for therapeutic abortions are processed and paid according to the same procedures and regulations applicable to all other requests for payment for medically necessary services under Title XIX." [1]

■ We believe that this stipulation is binding on the parties. However, even without such a stipulation, we think that considering the recent Supreme Court cases of *Maher v. Roe,* —— U.S. ——, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977); *Beal v. Doe,* —— U.S. ——, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977), and *Poelker v. Doe,* —— U.S. ——, 97 S.Ct. 2391, 53 L.Ed.2d 528 (1977), this is presently the law. In *Maher v. Roe, supra,* —— U.S. at ——, 97 S.Ct. at 2378,

the Court held " . . . that Title XIX of the Social Security Act does not require the funding of nontherapeutic abortions as a condition of participation in the joint federal-state medicaid program established by that statute." The Court carefully points out that Connecticut, in *Maher,* and Pennsylvania, in *Beal,* do provide financial assistance for medically necessary abortions. In fact, in *Beal, supra,* —— U.S. at ——, 97 S.Ct. at 2373 the Court points out that Pennsylvania does not provide such assistance " . . . unless two physicians in addition to the attending physician have examined the patient and have concurred in writing that the abortion is medically necessary." The *Beal* case was reversed and remanded to the court of appeals to determine whether this requirement interferes with the Congressional intent of the statute, Title XIX of the Social Security Act. Consequently, we conclude at this point the sole issue left for our disposition is whether the Louisiana statute in question is constitutional. Specifically, this Court has before it the question of whether the State can require all first trimester abortions to be performed in a licensed hospital.

■ The plaintiffs to this action are two indigent women who were pregnant at the time suit was filed and who desired therapeutic or medically necessary abortions, and two physicians willing to perform therapeutic abortions and two clinics offering facilities for the performance of abortions. Defendants are basically the Governor of Louisiana and Dr. Charles B. Odom, President, and the members of the Louisiana State Board of Medical Examiners. As members of the Board, they enforce the state licensure law LSA–R.S. 37:1285 and are also responsible for disciplinary action against physicians who perform abortions in violation of this statute. Plaintiffs Emma G., Virginia W., Dr. Roy Wood and Dr. Calvin Jackson all seek to represent the class of Medicaid recipients who seek therapeutic abortions in non-hospital facilities. In addi-

---

1. There is still open a question as to whether this has always been the policy of LDHHR or whether it was forced upon the Department by the institution of this law suit. The Court, however, is not called upon to resolve that issue at this time.

tion, Dr. Wood and Dr. Jackson seek to represent the class of physicians who desire to perform therapeutic abortions in non-hospital facilities, but face loss of their licenses to practice medicine for doing so. At this point, the Court has nothing before it which is narrowed to therapeutic abortions since it reads LSA–R.S. 37–1285(9) as requiring that *all* abortions must be performed in a licensed hospital. Consequently, we think the description of the class is now inaccurate. In addition, the Court is of the opinion that any class action is unnecessary. In its present posture, the relief sought by the plaintiffs is basically to have R.S. 37:1285(9) declared invalid and to permanently enjoin defendants, members of the Louisiana State Board of Medical Examiners, from utilizing this statute. If this Court grants such relief, it is obvious that class action relief would be superfluous.

■ Defendants also, indirectly, raise the issue of the standing of the individual plaintiffs to sue. Emma G. and Virginia W. have had their clinical abortions. However, *Roe v. Wade,* 410 U.S. 113, 124–125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), makes it clear that termination of pregnancy subsequent to the filing of suit does not make the suit moot. It is also pointed out that Drs. Wood and Jackson have admitted to continuously performing many abortions without threat of any disciplinary action being indicated by defendants or of any other action under the disputed statute. This position was rejected in *Doe v. Bolton,* 410 U.S. 179, 188, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973).

■ We now reach the remaining issue— whether the state can regulate first trimester abortions by requiring that all be performed in a licensed hospital. We think it is clear that, under the present law, they cannot. Plaintiffs rely heavily on *Arnold v. Sendak,* 416 F.Supp. 22 (S.D.Ind.1976). In *Arnold,* a three-judge court held that an Indiana statute requiring all abortions, including those during the first trimester of pregnancy, to be performed in a hospital or licensed health facility was unconstitutional. The court held in *Arnold, supra* at 23–24 that:

"The challenged section of the Indiana abortion statute is clearly unconstitutional. The decisions in *Roe* and *Doe* expressly state that regulation by the State as to the facility in which an abortion is to be performed is the type of regulation which can only occur after the 'compelling point' or end of the first trimester.

. . .

"The Supreme Court expressly prohibited such regulation prior to the compelling point:

'This means, on the other hand, that, for the period of pregnancy prior to this "compelling" point, the attending physician, in consultation with his patient, is free to determine, without regulation by the State, that, in his medical judgment, the patient's pregnancy should be terminated. If that decision is reached, the judgment may be effected by an abortion free of interference by the State.'

"In *Doe,* the Supreme Court also expressly held 'that the hospital requirement of Georgia law, because it fails to exclude the first trimester of pregnancy . . . is also invalid.'"

This decision was summarily affirmed by the Supreme Court, *Sendak v. Arnold,* 429 U.S. 968, 97 S.Ct. 476, 50 L.Ed.2d 579 (1976). Defendants have made much to do about the precedential significance of a summary affirmance and rely on *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); ref. den. 416 U.S. 1000, 94 S.Ct. 2414, 40 L.Ed.2d 777 (1975), for the proposition that it should be given little weight. However, even though we can distinguish *Arnold* from the *Edelman* case because in *Arnold* there was only one basis on which the Supreme Court could have considered the case, we decide this case as we do because we feel compelled to by *Roe v. Wade, supra,* and *Doe v. Bolton, supra,* and because we agree with the reasoning in *Mahoning Women's Center v. Hunter,* No. C76–203Y (N.D.Ohio, E.D. 5/25/77); *Mobile Women's Medical Clinic v. Bd. of Com'rs,* 426 F.Supp. 331 (S.D.Ala., S.D.1977); *Arnold v. Sendak, supra; Friendship Medical*

*Cen., Ltd. v. Chicago Bd. of Health,* 505 F.2d 1141 (7th Cir. 1974).

In *Roe v. Wade, supra,* the Supreme Court held that a pregnant woman's decision to terminate her pregnancy was grounded in the right to privacy and during her first trimester the right to make this determination, along with her physician's concurrence, is fundamental, so fundamental that the right could only be regulated when such regulation was justified by compelling state interest. But compelling state interest does not come into play until the end of the first trimester. The companion case of *Doe v. Bolton, supra,* strengthens this point as there the Supreme Court struck down the Georgia procedural requirement that abortions be done only in Joint Committee for Accreditation of Hospitals accredited hospitals.

Defendants' final effort at creating a new issue here is regarding their right to introduce evidence that the only safe abortion is one performed in a hospital. We have permitted them to file into the record, as evidence, the depositions of four doctors. They are: Dr. Jason Collins, Chief, Tulane Unit, Department of Obstetrics and Gynecology, Charity Hospital, who has performed only about five medically necessary abortions and whose deposition reads as though he is morally opposed to elective abortions; Dr. Roy C. Wood, Jr., one of the plaintiffs, who appears to be knowledgeable about abortions; Dr. Gary A. Dildy, Jr., a physician specializing in obstetrics and gynecology who is on the LSU Medical School teaching staff at Charity Hospital but who never performed an elective abortion; Dr. Charles B. Odom, President, Louisiana State Board of Medical Examiners, who stated that he had seen many complications with abortions at Charity Hospital which were performed between 1932–1941, when they were performed by unqualified abortionists. None of the evidence presented convinces us that clinical abortions are unsafe in the first trimester. However, we do not conclude that an evidentiary basis is necessary to our decision. We have considered these depositions because they represent honest opinions of respected professionals. We did not do so lightly but they do not convince the Court that the statute covers a compelling state interest. It is interesting to note that defendants offered no evidence, although uncategorically of the opinion that all abortions should be performed in a hospital, that the *therapeutic* abortions performed on Emma G. and Virginia W. in a clinic had proven unsafe. Actually, we agree with the court in *Arnold v. Sendak, supra* at 24 that "[t]here are no disputed questions of fact. The case presents simply a question of law, as to the constitutionality of the challenged section of statute." On the appeal to the Supreme Court in *Arnold v. Sendak,* the only other question raised was whether the district court had a "proper evidentiary basis for entry of summary judgment." As stated previously, there was a summary affirmance.

■ We find that LSA–R.S. 37:1285(9) is unconstitutional as determined under *Roe* and *Doe.* The State asks us to only invalidate that portion, if at all, which relates to the hospital requirement for abortions. We agree with the court in *Mahoning Women's Center v. Hunter, supra,* which refused to perform the legislative task of making, what would here be, the State's law constitutional. We do not find 37:1285 unconstitutional. Only section 9, which relates to impermissible or vague regulation of *all* abortions because this would include impermissible regulation of first trimester abortions.

Having found the statute to be unconstitutional,

IT IS THE ORDER OF THE COURT that defendants, Governor of the State of Louisiana and Members of the Louisiana State Board of Medical Examiners, be, and they are hereby, PERMANENTLY ENJOINED from enforcing LSA–R.S. 37:1285(9).