## GRAVES v. BARNES

No. A–795.   Decided February 7, 1972

See: 343 F. Supp. 704.

MR. JUSTICE POWELL, Circuit Justice.

This is an application for a stay of the judgment of a three-judge court sitting in the Western District of Texas. The court's decision covers issues raised in four consolidated actions.   The principal issues were as follows:

1. In *Graves* v. *Barnes,* plaintiffs challenged the State's reapportionment plan for the senatorial districts in Harris County (Houston) on the ground that they were racially gerrymandered.

2. In *Regester* v. *Bullock,* the State's reapportionment plan for the Texas House of Representatives was challenged on the grounds of population deviations from the one-man, one-vote requirement, and on the impermissibility of use of multi-member districts in the metropolitan communities.

3. In *Mariott* v. *Smith,* the House plan provision calling for a multi-member district for Dallas County was challenged.

4. In *Archer* v. *Smith,* a generally similar attack was leveled against the use of multi-member districting in Bexar County (San Antonio).

The four cases were consolidated and tried by a single three-judge panel.   After full pretrial discovery, during

which over 2,000 pages of depositions were taken, the District Court heard testimony at a 3½-day hearing. The extensive *per curiam* opinion, and the concurring and dissenting opinions, which were handed down after some three weeks of deliberation, reflect a careful and exhaustive consideration of the issues in light of the facts as developed. The court's conclusions, in substance, were as follows:

(a) The Senate redistricting plan, as promulgated by the Texas Legislative Redistricting Board, was approved.

(b) The House redistricting plan was held violative of the Equal Protection Clause because of population deviations from equality of representation. But, in an exercise of judicial restraint, the court suspended its decision in this respect for the purpose of affording the Legislature of Texas an opportunity to adopt a new and constitutional plan. Meanwhile, the forthcoming election may be held under the plan found to be deficient.

(c) The multi-member district plans for Dallas and Bexar Counties were found to be unconstitutional under the standard prescribed by this Court in *Fortson* v. *Dorsey*, 379 U. S. 433, 438–439 (1965); *Burns* v. *Richardson*, 384 U. S. 73, 88 (1966); and *Whitcomb* v. *Chavis*, 403 U. S. 124, 143 (1971). The three-judge court found from the evidence that these multi-member district plans would operate to minimize or cancel out the voting strength of racial minority elements of the voting population, and ordered the implementation of a plan calling for single-member districts for Dallas and Bexar Counties. The State offered no plan for single-member districts for these counties, and the court was compelled to draft its own plan. To minimize the disruptive impact of its ruling, the court ordered that the State's requirement that candidates run from the districts of their residence be abated for the forthcoming election. A candidate residing any-

where within the county, therefore, may run for election from any district in the county.

(d) The evidence with respect to nine other metropolitan multi-member districts was found insufficient to warrant treatment similar to that required for Dallas and Bexar Counties.

(e) Finally, the court's order stated that its judgment was final and that no stays would be granted.

In view of the foregoing holdings, the only present necessity to consider a stay relates to the District Court's decision with respect to multi-member districts in Dallas and Bexar Counties. A number of principles have been recognized to govern a Circuit Justice's in-chambers review of stay applications. Stays pending appeal to this Court are granted only in extraordinary circumstances. A lower court judgment, entered by a tribunal that was closer to the facts than the single Justice, is entitled to a presumption of validity. Any party seeking a stay of that judgment bears the burden of showing that the decision below was erroneous and that the implementation of the judgment pending appeal will lead to irreparable harm.

As a threshold consideration, Justices of this Court have consistently required that there be a reasonable probability that four members of the Court will consider the issue sufficiently meritorious to grant certiorari or to note probable jurisdiction. See *Mahan* v. *Howell*, 404 U. S. 1201, 1202; *Organized Village of Kake* v. *Egan*, 80 S. Ct. 33, 4 L. Ed. 2d 34 (1959). Of equal importance in cases presented on direct appeal—where we lack the discretionary power to refuse to decide the merits—is the related question whether five Justices are likely to conclude that the case was erroneously decided below. Justices have also weighed heavily the fact that the lower court refused to stay its order pending appeal, indicating

that it was not sufficiently persuaded of the existence of potentially irreparable harm as a result of enforcement of its judgment in the interim.

In applying these considerations to the present case, I conclude that a stay should not be granted. The case received careful attention by the three-judge court, the members of which were "on the scene" and more familiar with the situation than the Justices of this Court; and the opinions attest to a conscientious application of principles enunciated by this Court. Moreover, the order of the court was narrowly drawn to effectuate its decision with a minimum of interference with the State's legislative processes, and with a minimum of administrative confusion in the short run.

Following a practice utilized by other Justices in passing on applications raising serious constitutional questions (see *Meredith* v. *Fair*, 83 S. Ct. 10, 9 L. Ed. 2d 43 (1962); *McGee* v. *Eyman*, 83 S. Ct. 230, 9 L. Ed. 2d 267 (1963)), I have consulted informally with each of my Brethren who was available* at this time during the recess. Although no other Justice has participated in the drafting of this opinion, I am authorized to say that each of them would vote to deny this application. My denial of a stay at this point, of course, may not be taken either as a statement of my own position on the merits of the difficult questions raised in this case, or as an indication of what may, in fact, ultimately be the view of my colleagues on the Court.

*The application is denied.*

---

*All Justices, save two who were not available, have been consulted.