WILLIAMS *v.* ZBARAZ

No. A–958.   Decided May 24, 1979*

MR. JUSTICE STEVENS, Circuit Justice.

Applicants seek a stay of an order of the United States District Court for the Northern District of Illinois enjoining the State of Illinois from refusing to fund under its medical assistance programs medically necessary abortions performed prior to viability.

The plaintiffs in this action are a class of pregnant women eligible for Illinois medical assistance programs for whom an abortion is medically necessary and a class of physicians who perform such procedures and are certified to receive reimbursement for necessary medical services.   Their complaint alleged that the Illinois statute, 1977 Ill. Laws, Pub. Act 80–1091, § 1, denying reimbursement for medically necessary abortions vio-

---

*Together with No. A–967, *Quern* v. *Zbaraz,* also on application for stay of the same order.

lated their rights under both the Social Security Act and the Fourteenth Amendment. After the United States Court of Appeals for the Seventh Circuit reversed the District Court's initial decision to abstain, 572 F. 2d 582, the District Judge held that the Illinois statute violated the federal Social Security Act and its implementing regulations, since Illinois' funding of only "life-preserving" abortions fell short of the federal statutory responsibility to "establish reasonable standards" for providing medically necessary treatment. The court rejected the argument that the Hyde Amendment's [1] prohibition of federal funding of certain categories of abortions limited the State's statutory responsibility, and entered an injunction requiring Illinois to fund medically necessary abortions. The Court of Appeals, after denying a stay of the injunction pending appeal, reversed the District Court decision. The Court of Appeals concluded that the Hyde Amendment was not simply a limitation on the use of federal funds for abortions, but was itself a substantive amendment to the obligations imposed upon the State by Title XIX of the Social Security Act, 42 U. S. C. § 1396 *et seq.* The court recognized the constitutional questions raised by its interpretation and remanded to the District Court with instructions to consider the constitutionality of both the Illinois statute and the Hyde Amendment.

The District Court held both provisions to be unconstitutional on equal protection grounds. While rejecting the argument that strict scrutiny was appropriate, Judge Grady

---

[1] Public Law 95–480, § 210, 92 Stat. 1586, commonly known as the Hyde Amendment, provides:

"None of the funds provided for in this Act shall be used to perform abortions except where the life of the mother would be endangered if the fetus were carried to term; or except for such medical procedures necessary for the victims of rape or incest, when such rape or incest has been reported promptly to a law enforcement agency or public health service; or except in those instances where severe and long-lasting physical health damage to the mother would result if the pregnancy were carried to term when so determined by two physicians."

concluded that the statute's distinction between indigent women in medical need of abortions and those in need of other surgical procedures failed to further any legitimate, articulated state purpose. He was not persuaded by the State's argument that its interest in "fiscal frugality" supported the classification, since the costs of prenatal care, childbirth, and postpartum care were established to be substantially higher than the cost of abortions. As to the State's asserted interest in the encouragement of childbirth, the court recognized that while this interest was clearly legitimate in certain circumstances, see *Maher* v. *Roe,* 432 U. S. 464; *Poelker* v. *Doe,* 432 U. S. 519, the State does not have a legitimate interest in promoting the life of a nonviable fetus in a woman for whom an abortion is medically necessary. The United States had intervened as a defendant on remand, when the constitutionality of the Hyde Amendment was called into question. The District Court's injunction, however, was directed solely to the State of Illinois, which was ordered to fund medically necessary abortions prior to viability. The District Court refused to stay this order, and applicants—the Director of the Illinois Department of Public Aid and two physicians who intervened as defendants below—now seek a stay from me in my capacity as Circuit Justice, pending their appeal to this Court.

The standards governing the issuance of stays are well established. "Stays pending appeal to this Court are granted only in extraordinary circumstances. A lower court judgment, entered by a tribunal that was closer to the facts than the single Justice, is entitled to a presumption of validity." *Graves* v. *Barnes,* 405 U. S. 1201, 1203 (POWELL, J., in chambers). "To prevail here the applicant must meet a heavy burden of showing not only that the judgment of the lower court was erroneous on the merits, but also that the applicant will suffer irreparable injury if the judgment is not stayed pending his appeal." *Whalen* v. *Roe,* 423 U. S. 1313, 1316 (MARSHALL, J., in chambers). In my view, the applica-

tions before me do not present the "extraordinary circumstances" necessary to justify a stay.

An initial inquiry where a stay is sought in a case within this Court's appellate jurisdiction is "whether five Justices are likely to conclude that the case was erroneously decided below." *Graves* v. *Barnes, supra,* at 1203. Applicants' claim that the District Court improperly distinguished our prior decisions in *Maher* and *Poelker* is far from frivolous, and may well prevail in this Court. While the District Court's judgment is entitled to a presumption of validity, so are statutes validly enacted by Congress and the State of Illinois. Even so, a stay is not necessary to preserve the issue for decision by the Court: the controversy between plaintiffs and defendants is a live and continuing one, and there is simply no possibility that, absent a stay, our appellate jurisdiction will be defeated. Cf. *In re Bart,* 82 S. Ct. 675, 7 L. Ed. 2d 767 (Warren, C. J., in chambers). The question, then, is only whether the District Court's injunction should be observed in the interim. Unless the applicants will suffer irreparable injury, it clearly should be. See *Whalen* v. *Roe, supra,* at 1317–1318.

In addressing the irreparable-injury issue, the task of a judge or Justice is to examine the "competing equities," *Socialist Labor Party* v. *Rhodes,* 89 S. Ct. 3, 21 L. Ed. 2d 72 (STEWART, J., in chambers), a task that involves "balancing th[e] injury [to one side] against the losses that might be suffered by [the other]." *Railway Express Agency* v. *United States,* 82 S. Ct. 466, 468, 7 L. Ed. 2d 432, 434 (Harlan, J., in chambers). Where the lower court has already performed this task in ruling on a stay application, its decision is entitled to weight and should not lightly be disturbed. *Graves* v. *Barnes, supra; Railway Express Agency* v. *United States, supra.*

Both sides agree as to the consequences of a stay of the District Court's order in this case: if a stay is not granted, indigent women for whom an abortion is medically necessary will

be able to have abortions prior to viability; with a stay, many or most of them will not. In support of their argument that the former course will cause irreparable injury, applicants point to two factors. First is the State's financial integrity, and the losses which Illinois will suffer if forced to fund medically necessary abortions pending appeal, particularly since no federal reimbursement for these expenses has been ordered. I find this argument unpersuasive. Both the findings of the District Court and the record before me compellingly demonstrate that it is less expensive for the State to pay the entire cost of abortion than it is for it to pay only its share of the costs associated with a full-term pregnancy. Far from suffering any irreparable financial losses without a stay, the State will benefit financially if one is not granted.

The second state interest asserted merits greater concern. A refusal to stay the District Court's order, it is argued, will result in irreparable injury to the interest of the people of Illinois in protecting potential human life. We have in the past recognized the legitimacy of the state interest in encouraging childbirth, and I do not doubt its validity here. How much weight can properly be accorded to that interest, however, is a somewhat different question; *Roe* v. *Wade,* 410 U. S. 113, itself establishes that the State's interest in potential life is never so great that it can outweigh the woman's interest in her health or in deciding, prior to viability, whether to have an abortion. Moreover, the State clearly has an interest in preserving and protecting the life and health of the mother, as well as in promoting childbirth. In this case, where we deal only with "medically necessary" abortions, the weight to be accorded to the State's interest in childbirth must necessarily be diminished by its acknowledged interest in the health of the mother. Finally, the State's policy of encouraging childbirth is in no way guaranteed if a stay is granted. Even without state assistance, at least some indigent women will secure abortions: they may "beg, borrow, or steal" the money; they

may find doctors willing to treat them without charge; or they may resort to less costly and less safe illegal methods. While the refusal of a stay will in many cases defeat the State's ability to enforce its interest in promoting childbearing, the grant of a stay will not ensure the full effectuation of that interest.

These claims of irreparable injury to the interests of the State must be weighed against the plaintiffs' claims of irreparable injury to their interests if a stay is granted. First, the women plaintiffs here have a conceded constitutional right to choose to have an abortion. Whether or not the State is under a constitutional obligation to fund their abortions, the fact remains that meaningful exercise of this constitutional right depends on the actual availability of abortions. Under the District Court's judgment, the women will in fact be free to decide whether or not to have an abortion; if the judgment is stayed, the constitutional right to choose will for many be meaningless. And in these circumstances, the loss to the women may be particularly grievous. The order here is addressed only to abortions which are "medically necessary" for the health of the mother. The District Court found that if medically necessary abortions are not performed, "the mother may be subjected to considerable risk of severe medical problems, which may even result in her death."

"Under the Hyde Amendment standard, a doctor may not certify a woman as being eligible for a publicly funded abortion except where 'the life of the mother would be endangered . . . or . . . where severe and long-lasting physical health damage to the mother would result if the pregnancy were carried to term. . . .' Most health problems associated with pregnancy would not be covered by this language . . . and those that would be covered would often not be apparent until the later stages of pregnancy, when an abortion is more dangerous to the mother . . . . At the earlier stages of pregnancy, and even at the later

stages, doctors are usually unable to determine the degree of injury which may result from a particular medical condition . . . . The effect of the new criteria, then, will be to increase substantially maternal morbidity and mortality among indigent pregnant women." Memorandum opinion, No. 77C 4522 (ND Ill. Apr. 27, 1979), pp. 10–11.

Whether or not these findings provide support for the District Court's judgment on the merits, a distinct question which I do not consider here, it is clear that they do provide support for plaintiffs' claims of irreparable injury if a stay is granted.

Balancing these same equities of the plaintiffs and defendants, the District Court denied a stay of its injunction pending appeal. The applicants had also sought a stay from the Seventh Circuit, pending appeal, of the District Court's earlier order requiring the State to fund medically necessary abortions on the grounds that its refusal to do so violated the Social Security Act. That application was denied by Judges Fairchild, Bauer, and Wood, who concluded that "the defendant-appellant and intervening defendants-appellants have not sustained their heavy burden of demonstrating immediate irreparable harm in the absence of a stay of the district court's injunction pending appeal." Plaintiffs' Exhibit K–2.[2] Both of these courts, evaluating the same or substantially the same claims as those made here, concluded that a stay was not warranted. Their decisions must be given some weight. I am persuaded that they are correct.

Whether or not the plaintiffs prevail in this Court, the fact is that they did in the District Court. The burden is on the defendants-applicants to establish that the order of the District Court should not be enforced. Balancing the equities is always a difficult task, and few cases are ever free from doubt.

---

[2] A stay was then sought in this Court, and both THE CHIEF JUSTICE and I denied the application. I have reviewed the claims of the parties anew in connection with these applications. And I have concluded once again that the judgment of the lower court should not be disturbed.

Where there is doubt, it should inure to the benefit of those who oppose grant of the extraordinary relief which a stay represents. Cf. *Enomoto* v. *Spain,* 424 U. S. 951 (STEVENS, J., dissenting). In my judgment, as in the judgment of the District Court and the Court of Appeals, the equities here appear to favor the plaintiffs. The applications for a stay are therefore denied.