772 F.2d 329
 3 Fed.R.Serv.3d 474, 11 Soc.Sec.Rep.Ser. 88,
Medicare&Medicaid Gu 34,885
 STATE OF ILLINOIS, by the ILLINOIS DEPARTMENT OF PUBLIC AID,
Plaintiff- Appellant,
v.
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES and
Margaret Heckler, Secretary of Health and Human
Services, Defendants-Appellees.
 No. 84-2535.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 23, 1985.
Decided Aug. 30, 1985.
 
 Karen Konieczny, Asst. Atty. Gen., Chicago, Ill., for plaintiff-appellant.
 Robert S. Lavet, Civil Div., Dept. of Justice, Washington, D.C., for defendants-appellees.
 Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and TIMBERS, Senior Circuit Judge.*
 CUMMINGS, Chief Judge.
 
 
 1
 The State of Illinois, by the Department of Public Aid (the "DPA" or the "State"), seeks to overturn the United States Department of Health and Human Services' disallowance of federal reimbursement funds claimed by the DPA under the Medicaid program, Title XIX of the Social Security Act, 42 U.S.C. Sec. 1396 et seq. (commonly referred to as the "Medicaid" Act), for monies expended in providing certain abortion services pursuant to federal court orders. The district court granted summary judgment for the defendant Department of Health and Human Services (HHS). The DPA argues that the disbursement of federal funds is required by 1) the federal injunctions levied against the DPA in light of FED.R.CIV.P. 65(d), 2) the principle of "cooperative federalism" underlying the Medicaid program, and 3) certain HHS regulations. For the reasons set forth below, we affirm the decision of the district court.
 
 
 2
 * This controversy arises out of payment of funds by a state agency mandated by several federal court orders while the validity of the Hyde Amendment (infra note 1) and a similar Illinois statute, Public Act 80-1091, effective December 17, 1977, ILL.REV.STAT. ch. 23, Sec. 5-5 (1983), was litigated in federal court. Ultimately the legal bases for the injunctions were rejected by the Supreme Court and this Circuit and the injunctions subsequently were lifted. Its legal position vindicated, the DPA unsuccessfully sought federal reimbursement from the HHS pursuant to Title XIX of the Social Security Act for the funds unwillingly expended.
 
 
 3
 The Medicaid Act established a program whereby federal financial assistance would be available to participating states that provided medical services to needy recipients in accordance with certain federal statutory and regulatory requirements. Participating states are entitled to federal reimbursement or so-called "Federal Financial Participation" (FFP) for a percentage of the Medicaid expenditures. The availability of FFP to reimburse state Medicaid expenditures for abortion services has been sharply restricted since 1976 by the so-called "Hyde Amendment."[1] Enacted annually as an amendment to the relevant appropriations bill, the provision, though varying from year to year, generally has restricted abortion funding to instances where the life of the mother is endangered by the pregnancy, where the pregnancy is the result of rape or incest, and where the pregnancy would cause severe and long-lasting physical health damage to the mother.
 
 
 4
 In late 1977 the Illinois legislature enacted P.A. 80-1091, supra, which prohibited use of state funds to pay for abortion services except where such services "are necessary for the preservation of the life of the [pregnant] woman." The Illinois law subsequently was challenged on the ground that it violated substantive rights created by Title XIX of the Social Security Act and the Ninth and Fourteenth Amendments to the United States Constitution. Since the Medicaid Act provisions and its implementing regulations, which facially required funding of "medically necessary" or "therapeutic" abortions,[2] were not altered by the Hyde Amendment, a valid question existed as to whether the Amendment's funding restrictions substantively amended the Medicaid Act and thereby relieved the participating states of their obligation to provide for medically necessary abortions under the Act.
 
 
 5
 The first injunction prohibiting the DPA from enforcing P.A. 80-1091 was issued by this Court on January 11, 1978 (Zbaraz v. Quern, 572 F.2d 782 (7th Cir.1978)), and remained in force until March 15, 1978, while we considered the district court's decision to stay proceedings below challenging the Illinois statute pending an interpretation by an Illinois court. After we remanded for further proceedings, the district court concluded that the Hyde Amendment had not substantively amended Title XIX nor relieved Illinois of its Title XIX obligation to fund medically necessary abortions. Zbaraz v. Quern, 469 F.Supp. 1212 (N.D.Ill.1978) (R. Item 1, Exhibit B at 8-12). The court consequently permanently enjoined Illinois from enforcing P.A. 80-1091. On appeal this Court again reversed, disagreeing with the lower court's statutory interpretation and remanding for a ruling on the constitutionality of both P.A. 80-1091 and the Hyde Amendment. Zbaraz v. Quern, 596 F.2d 196 (7th Cir.1979), certiorari denied, 448 U.S. 907, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980). On remand the district court modified its injunction (on February 15, 1978) to require Illinois to fund only those abortion services for which FFP was available under the Hyde Amendment. After transfer to another district judge, the United States intervened to defend the constitutionality of the Hyde Amendment and on April 30, 1979, District Judge Grady declared P.A. 80-1091 unconstitutional and again enjoined the DPA from enforcing that statute as to deny payments for medically necessary abortions. Zbaraz v. Quern, 469 F.Supp. 1212 (N.D.Ill.1979). This injunction was dissolved on June 30, 1980, when the Supreme Court vacated Judge Grady's decision on direct appeal. Williams v. Zbaraz, 448 U.S. 358, 100 S.Ct. 2694, 65 L.Ed.2d 831 (1980). Consequently, the DPA was required to pay for abortion services under court order between the dates of January 11, 1978, to March 15, 1978; May 15, 1978, to February 15, 1979; and April 30, 1979, to June 30, 1980.
 
 
 6
 In July and August of 1980 the Health Care Financing Administration of HHS disallowed the DPA's claim for $965,399.00 in FFP for the costs of medically necessary abortions funded by plaintiff that were performed between August 5, 1977, and September 30, 1979. The Departmental Grant Appeals Board (DGAB) of HHS upheld the denial on February 26, 1982, on the ground that the Hyde Amendment prohibited any federal reimbursement and that the federal court orders directed at the DPA in no way required HHS to provide such reimbursement (R. Item 24, Exhibit A). Plaintiff appealed the HHS decision to the United States District Court for the Northern District of Illinois in an action for judicial review of a disallowance of FFP upheld by the DGAB. See State of Illinois, Department of Public Aid v. Schweiker, 707 F.2d 273, 277 (7th Cir.1983). The district court refused to order federal reimbursement and granted defendant summary judgment on the grounds that HHS was not prohibited from enforcing the Hyde Amendment by the Zbaraz court orders, that Judge Grady's April 1979 order was void and that any HHS regulations requiring reimbursement could not displace the valid statutory constraints of the Hyde Amendment.
 
 II
 
 7
 Since plaintiff solely challenges the legal basis of HHS' decision, this Court's task is to "decide all relevant questions of law * * * [and] interpret constitutional and statutory provisions" and "set aside agency action, findings, and conclusions found to be * * * not in accordance with law." 5 U.S.C. Secs. 706, 706(2)(A); see St. Francis Hospital Center v. Heckler, 714 F.2d 872, 873 (7th Cir.1983), certiorari denied, --- U.S. ----, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984); Illinois v. Schweiker, 707 F.2d at 275, 277. Defendant does not assert that any deference should be accorded its legal determinations and under the circumstances of this case, none would be appropriate. See St. John's Hickey Memorial Hospital, Inc. v. Califano, 599 F.2d 803, 812-815 (7th Cir.1979).
 
 
 8
 Contrary to the assertions of the plaintiff, the Hyde Amendment's prohibition on funding used to perform certain abortions is clear and unambiguous. See supra note 1. The DPA argues, however, that despite this prohibition, the special facts of this case require HHS to provide the requested FFP.[3]
 
 
 9
 The state first argues that the injunctions issued pursuant to the Zbaraz litigation requiring state funding of therapeutic Medicaid abortions also directly bound HHS to provide FFP. To support this proposition the DPA relies solely on FED.R.CIV.P. 65(d) which makes an injunction binding on "the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them." Although HHS only became a party to the third round of the Zbaraz litigation by intervening to defend the constitutionality of the Hyde Amendment, see supra p. 331, and the injunctions were solely directed at the State of Illinois (see Williams v. Zbaraz, 448 U.S. 358, 366, 100 S.Ct. 2694, 2699, 65 L.Ed.2d 831; 442 U.S. 1309, 1311, 99 S.Ct. 2095, 2097, 60 L.Ed.2d 1033 (1979) (Stevens, J., opinion in chambers); R. Item 1, Exhibits A, B) the plaintiff asserts that the concept of "cooperative federalism" underlying the Medicaid program placed the defendants HHS and Secretary of Health and Human Services "in active concert or participation" with the State and bound them to the requirements of the Zbaraz orders.
 
 
 10
 Regardless of the implications of the concept of "cooperative federalism," see infra p. 331, in this context, the district court was correct in pointing out that Rule 65(d) has no application to these circumstances. The purpose of the rule is to ensure "that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." Regal Knitwear Co. v. NLRB, 324 U.S. 9, 14, 65 S.Ct. 478, 481, 89 L.Ed. 661 (1945). It is a codification of the common-law rule allowing a non-party to be held in contempt for violating the terms of an injunction when a non-party is legally identified with the defendant or when the non-party aids or abets a violation of an injunction. See G. & C. Merriam Co. v. Webster Dictionary Co., 639 F.2d 29, 35 (1st Cir.1980); Herrlein v. Kanakis, 526 F.2d 252, 254 (7th Cir.1975). Here the State has fully complied with the relevant injunctions and thus enforcement of the orders or charges for contempt for failure to obey them simply is not at issue in this case. The State offers no justification for allowing Rule 65(d) to be used affirmatively to compel post hoc a non-party to pay for the cost of its compliance with a court order.
 
 
 11
 The DPA's principal argument is that the Hyde Amendment and Title XIX of the Social Security Act should be interpreted to obligate HHS to provide FFP where a State erroneously has been required to shoulder the entire burden of the Medicaid program under court order. The concept of "cooperative federalism" as outlined in Harris v. McRae, 448 U.S. 297, 308-309, 100 S.Ct. 2671, 2683-2684, 65 L.Ed.2d 784 (1980) provides the primary basis for this interpretation. In Harris the Supreme Court considered whether Title XIX requires a participating State to fund medically necessary abortions for which federal reimbursement is unavailable and decided the constitutionality of the Hyde Amendment. The Court described the "system of 'cooperative federalism' " as a "cooperative endeavor" in which "the Federal Government agrees to pay a specified percentage of 'the total amount expended * * * as medical assistance under the [federally approved] State [Medicaid] plan.' " Id. at 308, 100 S.Ct. at 2683 (quoting 42 U.S.C. Sec. 1396b(a)(1)). It concluded that Congress did not intend, in enacting either Title XIX or the Hyde Amendment, to require participating Medicaid States to fund medical services, specifically medically necessary abortions, for which Congress had withdrawn federal funding. Id. at 309-310, 100 S.Ct. at 2684. Consequently, the Court ruled that "Title XIX does not obligate a participating State to pay for those services for which federal reimbursement is unavailable." Id. at 309, 100 S.Ct. at 2684. Plaintiff asserts that consistent with the concept of cooperative federalism the "obverse" of the Court's ruling also must be true, namely, that "if, pursuant to a court order, the State pays involuntarily for therapeutic abortions, then the Department must furnish federal financial participation to reimburse the State for those costs" (Br. 12). In support of its assertion the DPA quotes the Supreme Court's statement in Harris that "the purpose of Congress in enacting Title XIX was to provide federal financial assistance for all legitimate state expenditures under an approved Medicaid plan," id. at 308, 100 S.Ct. at 2683 (emphasis supplied), and argues that the court-ordered expenditures here were legitimate (Br. 13).
 
 
 12
 This Court fails to see the logic of plaintiff's "obverse" proposition and cannot accept that the Supreme Court intended to include within the meaning of the term "legitimate state expenditures" those expenditures for which Congress has specifically prohibited federal funding. It would not be feasible for the State to assert that it could create a federal reimbursement obligation by simply funding itself certain expenditures for which federal reimbursement clearly is unavailable. But it is equally implausible that court injunctions erroneously ordering state funding despite the fact that federal funding was unavailable could somehow create an obligation for HHS under Title XIX. Both the district court's injunction of May 15, 1978, and this Court's injunction of January 11, 1978, were based on the potential obligation of the DPA to fund medically necessary abortions despite the Hyde Amendment restrictions.[4] Nor does the existence of a system requiring state expenditures only where federal reimbursement is available automatically require federal funding of state expenditures which are ordered by a court on the erroneous assumption that a denial of state and federal funds would be unconstitutional (as was the case with the third injunction, see Zbaraz v. Quern, 469 F.Supp. 1212).
 
 
 13
 The DPA simply makes too much of the term "cooperative federalism." The phrase is merely descriptive of this unique funding scheme; it is not a tool by which a court can remedy every inequity arising out of the Medicaid program. Nor is the term "cooperative federalism" a vague constitutional provision to which this Court is obligated to give meaning in all circumstances; in fact, the words do not even appear in Title XIX.
 
 
 14
 The DPA also argues that its court-ordered payments are "legitimate" state expenditures under the Medicaid program because of an HHS regulation allegedly authorizing federal reimbursement under the circumstances of the case. The regulation, 45 C.F.R. Sec. 205.10(b)(3) (1978) (recodified as 42 C.F.R. Sec. 431.250(b)(2) (1980)), states that:
 
 
 15
 Federal financial participation is available for the following items:
 
 
 16
 * * *
 
 
 17
 * * *
 
 
 18
 (3) Payments of assistance within the scope of Federally aided public assistance programs made in accordance with a court order.
 
 
 19
 The Departmental Grant Appeals Board noted that it had interpreted this regulation to require FFP under similar circumstances of court-ordered payments, but explained that the instant requests for reimbursement were distinguishable and impermissible in that a federal appropriations restriction specifically prohibited federal reimbursement for these particular expenditures (R. Item 24, Exhibit A at 14). The defendants argue that in light of the Hyde Amendment the DPA's expenditures were not "within the scope of a Federally aided public assistance progra[m]" and consequently that the regulation is inapplicable on its face to the DPA's predicament.[5] Even if the regulation authorizes reimbursement on these facts, plaintiff does not reveal how that result is consistent with the Hyde Amendment restrictions and with Title XIX as interpreted by the Supreme Court in Harris. See supra p. 333. It is clear that a regulation which is inconsistent with the statute under which it is promulgated is invalid. See United States v. Larionoff, 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977). The existence of an HHS regulation issued prior to the codification of the Hyde Amendment[6] that appears to authorize federal reimbursement on these facts no more explains this Court's authority to order FFP in the face of the Hyde Amendment restrictions than does plaintiff's reliance on the term "cooperative federalism."
 
 
 20
 The foregoing analysis also applies to the DPA's claim that the defendants are required to provide FFP for those periods during which the State was required by HHS regulations to give notice to providers and recipients of a reduction in the program's coverage. See 45 C.F.R. Sec. 205.10(a)(4)(1)(A) (1978) (recodified as 42 C.F.R. Sec. 431.211 (1980)).[7] To the extent that the HHS regulation can be interpreted to require a State to furnish notice after the lifting of injunctions erroneously requiring state funding of nonreimbursible Medicaid expenditures, and interpreted to require federal reimbursement of State expenditures for medically necessary abortions during such notice periods, the regulation squarely conflicts with the Hyde Amendment limitations and is without effect.
 
 
 21
 Plaintiff's reliance on Pennsylvania v. Department of Health and Human Services, 723 F.2d 1114 (3d Cir.1983), is misplaced. In Pennsylvania the Third Circuit ruled that because the Hyde Amendment was ambiguous as to the date its funding restrictions were to take effect, the Amendment did not bar federal reimbursement for medically necessary abortions performed during an HHS-required notice period which followed the September 19, 1980, vacating of an injunction prohibiting implementation of the Hyde Amendment. The Pennsylvania case did not involve orders premised on the State's obligation under Title XIX in the absence of FFP to fund medically necessary abortions as does the present case. See supra pp. 333-334. Since the basis of the instant court orders was that FFP was unavailable under any circumstances, no foundation exists for ordering federal reimbursement during the notice period following such injunctions.
 
 
 22
 Although the third injunction arising out of the Zbaraz litigation is similar to the one considered in Pennsylvania in that it also was premised (in part) on the potential unconstitutionality of the Hyde Amendment, reimbursement for expenditures incurred during the notice period following the final injunction is not at issue in this case. This third order was dissolved on June 30, 1980 (and any notice period presumably would follow that date), whereas the plaintiff only seeks reimbursement for state-funded abortions performed prior to September 30, 1979.
 
 
 23
 Although this Court is sympathetic to the plight of the State,[8] no legal basis exists to require federal reimbursement for DPA expenditures incurred pursuant to the Zbaraz court orders.
 
 
 24
 The judgment of the district court is affirmed.
 
 
 
 *
 The Honorable William H. Timbers, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, is sitting by designation
 
 
 [1]
 See Pub.L. 96-123, Sec. 109, 93 Stat. 926 (1979); Pub.L. 95-480, Sec. 210, 92 Stat. 1586 (1978); Pub.L. 95-205, Sec. 101, 91 Stat. 1460 (1977); Pub.L. 94-439, Sec. 209, 90 Stat. 1434 (1976). The fiscal year 1978 and 1979 versions of the Hyde Amendment provide:
 None of the funds contained in this Act shall be used to perform abortions except when the life of the mother would be endangered if the fetus were carried to term; or except for such medical procedures necessary for the victims of rape or incest, when such rape or incest have been reported promptly to a law enforcement agency or public health service, or except in those instances where severe and long-lasting physical health damage to the mother would result if the pregnancy were carried to term when so determined by two physicians.
 
 
 [2]
 The injunctions in this case defined "therapeutic" abortions as "medically necessary or medically indicated according to the professional medical judgment of a licensed physician in Illinois, exercised in light of all factors affecting a woman's health."
 
 
 [3]
 All federal courts that have passed on the issue before this Court, with one exception since reversed by the Eleventh Circuit, have denied federal reimbursement. The Eleventh Circuit recently reversed a Northern District of Georgia decision, State of Georgia v. Heckler, 583 F.Supp. 1377 (N.D.Ga.1984), which had required HHS to reimburse the State of Georgia for court-ordered funding of medically necessary abortions despite the Hyde Amendment restrictions. See State of Georgia v. Heckler, 768 F.2d 1293 (11th Cir.1985). Cases also denying federal reimbursement include Women's Health Services, Inc. v. Maher, 514 F.Supp. 265 (D.Conn.1981) and Commonwealth v. Massachusetts v. Heckler, No. 82-1197-N (D.Mass. Feb. 28, 1985) (recommendation of United States Magistrate Robert B. Collings) (objections filed and case pending before district court)
 
 
 [4]
 See R. Item 1, Exhibit B at 12 (Zbaraz v. Quern, 469 F.Supp. 1212 (N.D.Ill.1978)); R. Item 1, Exhibit A (Zbaraz v. Quern, 572 F.2d 582 (7th Cir.1978)); Zbaraz v. Quern, 572 F.2d 582, 583, 585 (7th Cir.1978)
 
 
 [5]
 The defendants did not argue below that 45 C.F.R. Sec. 205.10(b)(3) only applied to payments made upon court order following judicial review of agency decisions made after hearings. In Commonwealth of Massachusetts v. Heckler, No. 82-1197-N (D.Mass. Feb. 28, 1985), United States Magistrate Robert Collings accepted this argument in ruling that Massachusetts was not entitled to recover FFP under similar circumstances. See supra note 3
 
 
 [6]
 See 45 C.F.R. Sec. 205.10(b)(3) (1975)
 
 
 [7]
 The regulation states in pertinent part:
 (4) In cases of intended action to discontinue, terminate, suspend or reduce assistance:
 (i) The State or local agency shall give timely and adequate notice, except as provided for in paragraphs (a)(4)(ii), (iii), or (iv) of this section. Under this requirement:
 (A) "Timely" means that the notice is mailed at least 10 days before the date of action, that is, the date upon which the action would become effective;
 * * *
 
 
 [45]
 C.F.R. Sec. 205.10(a)(4)(1)(A) (1978)
 
 
 [8]
 Justice Stevens, however, in his denial of a requested stay of the final Zbaraz injunction, found that the State's financial integrity, which is the underlying issue of this case, was not harmed but was helped by the order requiring state funding of medically necessary abortions:
 In support of their argument that the former course [failure to grant the stay] will cause irreparable injury, applicants point to two factors. First is the State's financial integrity, and the losses which Illinois will suffer if forced to fund medically necessary abortions pending appeal, particularly since no federal reimbursement for these expenses has been ordered. I find this argument unpersuasive. Both the findings of the District Court and the record before me compellingly demonstrate that it is less expensive for the State to pay the entire cost of abortion than it is for it to pay only its share of the costs associated with a full-term pregnancy. Far from suffering any irreparable financial losses without a stay, the State will benefit financially if one is not granted.
 Williams v. Zbaraz, 442 U.S. at 1313, 99 S.Ct. at 2098 (opinion in chambers).