The COMMONWEALTH OF MASSACHUSETTS by its DEPARTMENT OF PUBLIC WELFARE

v.

The UNITED STATES.

No. 305–87C.

United States Claims Court.

June 13, 1988.

Asst. Atty. Gen. for the Commonwealth of Massachusetts Carl Valvo, Boston, Mass., with whom was Atty. Gen. James M. Shannon, for plaintiff. Asst. Atty. Gen. Jane S. Schacter, of counsel.

Judry. L. Subar, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, U.S. Dept. of Justice, for defendant.

## OPINION

MARGOLIS, Judge.

In this appeal from an administrative decision, the Commonwealth of Massachusetts (Commonwealth) seeks reimbursement from the United States Department of Health and Human Services (HHS) for the costs of providing Medicaid abortions during the period in which the Commonwealth was acting under a federal court order to provide the abortions. During this time, Congress had prohibited HHS from funding such abortions. The U.S. Court of Appeals for the First Circuit, finding that the Claims Court has exclusive jurisdiction over the claim, transferred the case to this court. *See Commonwealth of Massachusetts v. Departmental Grant Appeals Board*, 815 F.2d 778 (1st Cir.1987). The defendant has moved for dismissal arguing that the Commonwealth's claim for reimbursement fails as a matter of law. After a review of the record and after hearing oral argument, the defendant's motion to dismiss is granted.

## FACTS

### Medicaid

Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396s, establishes the Medicaid program. Under the Medicaid program, the federal government provides states with financial assistance called Federal Financial Participation (FFP) in an effort to encourage states to subsidize health care for needy persons. *See* 42 U.S.C. § 1396. While participation in the Medicaid program is voluntary, a state that chooses to participate in the program must do so under a state plan that conforms with Medicaid Act requirements and is approved by HHS. 42 U.S.C. § 1396a.

The receipt of FFP is conditioned on a state's compliance with federal requirements. HHS advances FFP funds to the state quarterly on the basis of estimated expenditures, and this sum is adjusted

when, at the end of the quarter, the state reports its actual expenditures. *See* 42 U.S.C. § 1396b; 45 C.F.R. § 201.5 (1978). The Medicaid Act provides that each state, "as far as practicable under the conditions of such State" furnish medical assistance to those "whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396. Until 1979, courts interpreted this provision of the Medicaid Act as requiring participating states to fund all "medically necessary" abortions for Medicaid recipients. *See Rush v. Parham,* 440 F.Supp. 383, 389 (1977); *see also Beal v. Doe,* 432 U.S. 438, 444–45, 97 S.Ct. 2366, 2370–71, 53 L.Ed.2d 464 (1977) (stating that "serious statutory questions might be presented if a state Medicaid plan excluded necessary medical treatment from its coverage").

*The Hyde Amendment*

Since 1976, federal law has prohibited the use of appropriated federal funds to reimburse states for the cost of abortions performed for Medicaid recipients except where the abortion was necessary to protect the health of the mother and, in different years, in certain other circumstances.[1] This prohibition, popularly known as the Hyde Amendment, is contained in a rider to HHS's (formerly the Department of Health, Education and Welfare) annual appropriations bill.[2]

On February 18, 1980, the U.S. District Court for the Eastern District of New York declared the Hyde Amendment unconstitutional. *See McRae v. Califano,* 491 F.Supp. 630 (E.D.N.Y.), *rev'd sub nom. Harris v. McRae,* 448 U.S. 297, 100 S.Ct.

2671, 65 L.Ed.2d 784 (1980). The district court ordered HHS, on a nationwide basis, to " '[c]ease to give effect' " to the Hyde Amendment and to " '[c]ontinue to authorize the expenditure of federal matching funds' " for medically necessary Medicaid abortions. *Harris v. McRae,* 448 U.S. 297, 306, 100 S.Ct. 2671, 2682–83, 65 L.Ed.2d 784 (1980) (quoting the district court's order).

On appeal, the Supreme Court, on June 30, 1980, found the Hyde Amendment constitutional and reversed the district court, thereby making FFP unavailable to reimburse states for providing abortions falling outside of the exceptions to the Hyde Amendment. *Harris v. McRae,* 448 U.S. at 326, 100 S.Ct. at 2693. The Court further held that "a State that participates in the Medicaid program is not obligated under Title XIX to continue to fund those medically necessary abortions for which federal reimbursement is unavailable under the Hyde Amendment." *Id.; see also Williams v. Zbaraz,* 448 U.S. 358, 100 S.Ct. 2694, 65 L.Ed.2d 831 (1980).

In complying with the district court's order, HHS had continued to reimburse the states for all medically necessary abortions from February 19, 1980, when the district court found the Hyde Amendment unconstitutional, until September 17, 1980, when the district court's order was lifted.

The Commonwealth of Massachusetts was, for most of the time period involved in this case, under a different federal court order to pay for medically necessary abortions that were not federally fundable under the Hyde Amendment. The procedural

1. While the funding restrictions contained in the Hyde Amendment have permitted different exceptions to the prohibition at different times, it is undisputed that the Commonwealth's claim is based entirely upon abortions that, though medically necessary, do not fall within any of the exceptions to the prohibition of federal funding contained in the Hyde Amendment. For 1978 and 1979, the exceptions to the Hyde Amendment allowed federal funding for abortions: where pregnancy was the result of rape or incest; where severe and long-lasting physical injury to the mother would result if the pregnancy were carried to term; or where the life of the mother would be endangered if her pregnancy were carried to term.

2. The Hyde Amendment has been enacted as a joint resolution or a rider to HHS's appropriations bill each year since 1976. The versions at issue here are Pub.L. No. 96–369, § 110, 94 Stat. 1351, 1356 (Oct. 1, 1980); Pub.L. No. 96–123, § 109, 93 Stat. 923, 926 (Nov. 20, 1979); Pub.L. No. 96–86, § 118, 93 Stat. 656, 662 (Oct. 12, 1979); Pub.L. No. 95–480, § 210, 92 Stat. 1567, 1586 (Oct. 18, 1978); Pub.L. No. 95–130, 91 Stat. 1153, 1153 (Oct. 13, 1977). Variations in the specific provisions are not directly relevant here, and the term "Hyde Amendment" is used to refer to any and all versions.

background of the litigation that led to the federal court order is helpful to an understanding of the underlying issue in this case.

In July 1978, two groups of plaintiffs filed actions in the U.S. District Court for the District of Massachusetts challenging a Massachusetts statute that limited the expenditure of state funds for abortions to those abortions "necessary to prevent the death of the mother" and to those procedures "necessary for the proper treatment of the victims of forced rape or incest." *Preterm, Inc. v. Dukakis*, No. 78–1653–C (filed July 13, 1978); *Baird v. Sharp*, No. 78–1637–C (filed July 12, 1978); *see Jaffe v. Sharp*, 463 F.Supp. 222, 224 (D.Mass.1978), *aff'd sub nom. Preterm, Inc. v. Dukakis*, 591 F.2d 121 (1st Cir.), *cert. denied*, 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1057 (1979). The plaintiffs, who did not name HHS as a party to either suit, alleged that the Massachusetts statute, which was more restrictive than the Hyde Amendment,[3] was unconstitutional and in conflict with Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396s. The plaintiffs further argued that the Hyde Amendment must be construed as authorizing federal funds for certain limited categories of abortions and thus shifting to the states the total cost of providing those abortion services not funded under the Hyde Amendment but nonetheless required by the Medicaid Act. *See Preterm*, 591 F.2d at 127. Therefore, plaintiffs claimed, the Commonwealth should be required under the Medicaid Act to fund all medically necessary abortions, including those abortions for which the Hyde Amendment prohibited federal funding.

In *Jaffe v. Sharp*, the district court found that the Massachusetts statute violated specific provisions and the basic thrust of the Medicaid Act by failing to provide for abortions that were "medically necessary." However, the court refused to require the Commonwealth to fund "medically necessary" abortions for which the Hyde Amendment prohibited federal funding. The court reasoned that striking down the statute would have created the anomalous situation in which "*all* abortions sought by state Medicaid recipients would have to be completely funded by the Commonwealth." Instead, the court modified the Massachusetts statute so that it complied with the Hyde Amendment. *Jaffe v. Sharp*, 463 F.Supp. at 230. The court then issued a preliminary injunction that required the Commonwealth to pay for those abortions eligible for FFP under the Hyde Amendment. *Id.*

The *Preterm* plaintiffs, however, sought an expanded injunction to cover all medically necessary abortions pending appeal of the district court's preliminary injunction. On August 7, 1978, the U.S. Court of Appeals for the First Circuit granted plaintiff's motion and modified the district court's injunction to require the Commonwealth to provide funding for abortions to "all Medicaid-eligible pregnant women who desire to obtain an abortion and for whom a physician has determined that an abortion is a medically-necessary service." *Preterm*, 591 F.2d at 124. The First Circuit justified the expanded injunction on the grounds that the court found Preterm's position "not patently insubstantial" and, therefore, the expanded injunction would "preserv[e] the status quo" until the case was decided. *See Commonwealth of Massachusetts v. Departmental Grant Appeals Board*, 815 F.2d 778, 789 n. 7 (1st Cir.1987). The district court subsequently entered the expanded injunction as its final order.

On January 15, 1979, the First Circuit ruled that "[t]he Medicaid Act, to the extent of its repugnancy with the Hyde Amendment, has therefore been altered by the Amendment." *Preterm*, 591 F.2d at 134. Therefore, the court continued, the altered "Medicaid Act does not mandate that a state provide all medically necessary services" and, as a result, a state is only

---

**3.** The Massachusetts statute did not contain the exception, contained in the Hyde Amendment, that allows funding of abortions where "severe and long-lasting physical health damage to the mother would result if the pregnancy were carried to term when so determined by two physicians."

required to fund those abortions for which federal funding is available. *Id.* In so ruling, the First Circuit affirmed the district court's decision "enjoining implementation of [the Massachusetts statute], insofar as it prohibits state reimbursement for abortions which would qualify for federal reimbursement under the terms of the Hyde Amendment." *Id.* Nevertheless, the court, by orders dated January 29, 1979 and August 2, 1979 "continued in force" its expanded injunction of August 7, 1978 pending the filing and final disposition of plaintiffs' petition for a writ of certiorari. Plaintiffs' petition for certiorari was denied on May 14, 1979. *Preterm, Inc. v. King,* 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1057 (1979). The injunction evidently expired upon the Supreme Court's denial of plaintiffs' request for a rehearing on October 1, 1979. *Preterm, Inc. v. King,* 444 U.S. 888, 100 S.Ct. 187, 62 L.Ed.2d 122 (1979). The regulations implementing the Hyde Amendment were reinstated effective September 20, 1980, following the Supreme Court's decision in *Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980), which declared the Hyde Amendment constitutional, reversing the district court's decision in *McRae v. Califano.*

The result of the litigation summarized above is that Massachusetts was under a federal court order from August 7, 1978 through September 30, 1979, to pay for all medically necessary abortions including those not federally fundable under the Hyde Amendment. For the period from October 1, 1979 until February 18, 1980, the parties disagree as to whether the Commonwealth remained under court order to pay for non-Hyde abortions.[4] Finally, for the period from February 19, 1980, through September 19, 1980, HHS provided FFP to Massachusetts for the costs of medically necessary abortions because of the *McRae v. Califano* injunction against implementation of the Hyde Amendment.

*The Commonwealth's Claim*

The Amended Complaint sets forth the Commonwealth's claims as follows. On December 29, 1980, the Health Care Financing Administration (HCFA) of HHS disallowed $16,947 in FFP claimed by the Commonwealth of Massachusetts under the Medicaid program for the costs of medically necessary abortions performed in Massachusetts during the period from December 1, 1977 to December 31, 1978. On February 26, 1982, HHS's Grant Appeals Board, in Board Decision No. 260, sustained HCFA's disallowance of the Commonwealth's claim. In its decision, the Board rejected the Commonwealth's claim that HHS was required to provide FFP for non-Hyde abortions because Massachusetts had been directed to pay for those abortions by a federal court order. The Board concluded that the clear language of the Hyde Amendment restricted HHS's authority to expend federal funds for abortions and that this restriction was not overcome by a court order that did not direct HHS to make payments to Massachusetts.

On September 22, 1982, HCFA, relying on Board Decision No. 260, disallowed an additional $408,229 in FFP claimed by Massachusetts for the cost of non-Hyde abortions performed during the period from January 1, 1979 through September 30, 1980. The disallowance did not cover payments for medically necessary abortions performed between February 19, 1980 and September 19, 1980, the time period when the regulations implementing the Hyde Amendment were suspended by court order in *McRae v. Califano,* 491 F.Supp. 630 (E.D.N.Y.), *rev'd sub nom. Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980).

Massachusetts appealed HCFA's second disallowance to the Board, but on December 15, 1982, the Board issued a summary decision, based on the reasoning of Board Decision No. 260, upholding HCFA's disallowance. HCFA subsequently disallowed

---

**4.** The disagreement turns on whether a notice period followed the expiration of the First Circuit's orders. Although the orders expired on October 1, 1979, the Commonwealth claims that it could not reduce benefits until it gave suffi-

cient notice of its intent to do so. *See Commonwealth of Pennsylvania v. Department of Health and Human Services,* 723 F.2d 1114 (3rd Cir. 1983).

an additional $374,910 in FFP for non-Hyde abortions performed while the Hyde Amendment regulations were in effect. Massachusetts again appealed the disallowance, and again, the Board sustained the disallowance.

On May 6, 1982, Massachusetts filed suit in the U.S. District Court for the District of Massachusetts. *See Commonwealth of Massachusetts v. Departmental Grant Appeals Board,* 815 F.2d 778, 781 (1st Cir. 1987). The district court rejected the Commonwealth's claims on the merits. *Id.* at 780–81. On appeal, the federal government questioned the district court's jurisdiction, claiming that the Claims Court possesses exclusive jurisdiction over the matter. *Id.* at 781. The First Circuit agreed, and, without reaching the merits of the district court's ruling, directed the district court to transfer the case to the Claims Court. *Id.* at 789.

### DISCUSSION

#### A. *Jurisdiction*

■ As the First Circuit correctly indicated, the Claims Court must "decide our own jurisdiction ... and cannot have it conferred on us by any other court." *Diamond v. United States,* 228 Ct.Cl. 493, 498, 657 F.2d 1194, 1197 (1981), *cert. denied,* 459 U.S. 831, 103 S.Ct. 70, 74 L.Ed.2d 69 (1982). The Claims Court derives its jurisdiction, in part, from the Tucker Act, which provides:

> The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491. The Commonwealth requests that this court reverse the decisions of HHS's Grant Appeals Board that disallowed reimbursements to Massachusetts of $800,086. The Amended Complaint filed in this court alleges statutory violations as grounds for recovery. Specifically, the Commonwealth claims that HHS's decision violates 42 U.S.C. § 1396b(a), which, plaintiff argues, requires HHS to reimburse states for the costs of providing abortions to Medicaid recipients to the extent that state officials are required under federal law to make such expenditures. The Commonwealth argues that the First Circuit's injunction, ordering the Commonwealth to fund all "medically necessary" abortions, was the court's interpretation of the Commonwealth's obligations under federal law. Thus, the Commonwealth believes that it is entitled to reimbursement.

Jurisdiction may appropriately rest in the Claims Court where a plaintiff asserts a claim against the United States founded upon an Act of Congress. 28 U.S.C. § 1491. The Court of Claims in *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002 (1967), provided the classic explication of this jurisdictional grant. The court explained:

> But it is not every claim involving or invoking the Constitution, a federal statute, or a regulation which is cognizable here. The claim must, of course, be for money. Within that sphere, the non-contractual claims we consider under Section 1491 can be divided into two somewhat overlapping classes—those in which the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum; and those demands in which money has not been paid but the plaintiff asserts that he is nevertheless entitled to payment from the treasury.... In the second group, where no such payment has been made, the allegation must be that the particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum.

*Id.* at 605, 372 F.2d at 1007. The Supreme Court, in *United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983), further explained that "the claimant must demonstrate that the source of substantive law he relies upon ' "can fairly be interpreted as mandating compensation by the Federal Government for the damage

sustained." ' " *Id.* at 216–17, 103 S.Ct. at 2968 (quoting *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976) (quoting *Eastport,* 178 Ct.Cl. at 607, 372 F.2d at 1009)).

▆ Thus, it is necessary to determine whether Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396s, can be fairly interpreted as requiring the federal government to reimburse the Commonwealth for Medicaid expenditures. Title XIX expressly provides that "the Secretary ... shall pay to each State which has a plan approved under this subchapter ... an amount equal to the Federal medical assistance percentage ... of the total amount expended ... as medical assistance under the State plan." 42 U.S.C. § 1396b(a). Further, the Commonwealth cites to 45 C.F.R. § 205.10(b)(3) (1978), which provides: "Federal financial participation is available for ... [p]ayments of assistance within the scope of Federally aided public assistance programs made in accordance with a court order." In reviewing the statutory language, this court agrees with the First Circuit that either of the provisions cited by the Commonwealth can be fairly interpreted as mandating the payment of money by the federal government as a general proposition. The monetary relief in this case takes the form of promised reimbursement.

At the same time, it is important to note that while a case may fall within the jurisdiction of the Claims Court because the statute relied upon mandates the payment of money, the case may still be lost on the merits because the statute and regulations do not authorize payment under the particular circumstances of that case. *Commonwealth of Massachusetts,* 815 F.2d at 787.

### B. *Reimbursement*

The Commonwealth's principal argument is that the First Circuit's court order imposed the costs at issue here upon the Commonwealth as a requirement to its participation in the Medicaid program. The Commonwealth explains that given the cooperative nature of the Medicaid program the Commonwealth is entitled to reimbursement from the United States. The concept

of "cooperative federalism" as outlined in *Harris v. McRae,* 448 U.S. 297, 308–09, 100 S.Ct. 2671, 2683, 65 L.Ed.2d 784 (1980), provides the primary basis for this interpretation.

After finding the Hyde Amendment constitutional in *Harris v. McRae,* the Supreme Court considered whether Title XIX requires a participating state to fund medically necessary abortions for which federal reimbursement is unavailable. The Court described the Medicaid program as a "system of 'cooperative federalism' " and as a "cooperative endeavor" in which "the Federal Government agrees to pay a specified percentage of 'the total amount expended ... as medical assistance under the [federally approved] State [Medicaid] plan' ...." *Id.* at 308, 100 S.Ct. at 2683 (quoting 42 U.S.C. § 1396b(a)(1)). The Court concluded that Congress did not intend, in enacting either Title XIX or the Hyde Amendment, to require states participating in the Medicare program to fund medical services, specifically medically necessary abortions, for which Congress had withdrawn federal funding. Consequently, the Court ruled that "Title XIX does not obligate a participating State to pay for those medical services for which federal reimbursement is unavailable." *Id.* at 309, 100 S.Ct. at 2684.

Plaintiff asserts that the United States, due to the "cooperative federalism" of the Medicaid program, is nevertheless liable for its share of the necessary costs of that program, including the costs of complying with court orders enjoining the Commonwealth to pay for the abortions at issue. In support of this assertion, the Commonwealth quotes the Supreme Court's statement in *Harris v. McRae* that "the purpose of Congress in enacting Title XIX was to provide federal financial assistance for all *legitimate state expenditures* under an approved Medicaid plan." *Id.* at 308, 100 S.Ct. at 2684 (emphasis added). The Commonwealth further explains that a court order makes the expenditures at issue presumptively legitimate. In so doing, the Commonwealth relies upon 45 C.F.R. § 205.10(b)(3) (1978) as additional support.

Prior to this case, with one exception, all federal courts that have ruled on the issue in this case have denied federal reimbursement. The exception was in *Commonwealth of Pennsylvania v. Department of Health and Human Services*, 723 F.2d 1114 (3rd Cir.1983), in which the court ruled only that reimbursement was required during a brief notice period following the enactment of the Hyde Amendment. Cases denying federal reimbursement include *State of Georgia v. Heckler*, 768 F.2d 1293 (11th Cir.1985), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 803, 88 L.Ed.2d 779 (1986); *Women's Health Services, Inc. v. Maher*, 514 F.Supp. 265 (D.Conn.1981); and *State of Illinois v. United States Department of Health and Human Services*, 772 F.2d 329 (7th Cir.1985). The plaintiff offers no new compelling arguments to depart from this precedent.

In the absence of the Hyde Amendment, there is little dispute that the Medicaid Act would require the federal government to reimburse the Commonwealth for the costs of these abortions. However, this court cannot accept the argument that the Supreme Court intended to include within the meaning of the term "legitimate state expenditures" those expenditures for which Congress, through the Hyde Amendment, has specifically prohibited federal funding. *State of Illinois v. United States Department of Health and Human Services*, 772 F.2d 329 (7th Cir.1985). In *State of Illinois*, the court explained:

> It would not be feasible for the State to assert that it could create a federal reimbursement obligation by simply funding itself certain expenditures for which federal reimbursement clearly is unavailable. But it is equally implausible that court injunctions erroneously ordering state funding despite the fact that federal funding was unavailable could somehow create an obligation for HHS under Title XIX....
>
> The [State] simply makes too much of the term "cooperative federalism." The phrase is merely descriptive of this unique funding scheme; it is not a tool by which a court can remedy every inequity arising out of the Medicaid program.

Nor is the term "cooperative federalism" a vague constitutional provision to which this Court is obligated to give meaning in all circumstances; in fact, the words do not even appear in Title XIX.

*Id.* at 333–34.

■ The Commonwealth also argues that regulations require federal reimbursement because the court ordered payments were made "within the scope" of the Medicaid program. The regulation, 45 C.F.R. § 205.10(b)(3) (1978) provides:

> Federal financial participation is available for the following items:
>
> * * * * * *
>
> (3) payment of assistance within the scope of Federally aided public assistance programs made in accordance with a court order.

However, such an application of this regulation conflicts with the Hyde Amendment's specific prohibition on federal funding. In light of the specificity of the restrictions set out in the Hyde Amendment, the Commonwealth's expenditures were not "within the scope of Federally aided public assistance programs," and consequently the regulation is inapplicable. *State of Illinois*, 772 F.2d at 334.

■ Even if the regulation were applicable in this case, the court must apply the well-established rule that an agency regulation that conflicts with a statute passed by Congress is without legal effect. *See United States v. Larionoff*, 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977). The Commonwealth's interpretation of 45 C.F.R. § 205.10(b)(3) (1978) clearly conflicts with the provisions of the Hyde Amendment, and therefore such interpretation cannot be afforded legal effect. *See State of Georgia v. Heckler*, 768 F.2d at 1299.

The Commonwealth notes that "even apart from the broader entitlement to reimbursement ..., it seems indisputable that a remand is necessary so the Grant Appeals Board can calculate the appropriate notice periods for which Massachusetts must be reimbursed." The Commonwealth relies on *Commonwealth of Pennsylvania v. De-*

*partment of Health and Human Services,* 723 F.2d 1114 (3rd Cir.1983), in asserting that the states are bound to give Medicaid recipients ten days notice before cutting benefits. The Commonwealth asserts that after the *McRae v. Califano* order was lifted on September 17, 1980, the Commonwealth must be reimbursed for some notice period that it is required to give to Medicaid recipients. In so arguing, the Commonwealth relies on 45 C.F.R. § 205.10(a)(4)(i)(A) (1978), which provides that a state must give Medicaid recipients ten days advance notice before taking action.

■ The Commonwealth's argument is not persuasive. As noted above, when a regulation conflicts with a statute, the regulation must yield to the statute. The specific prohibition contained in the Hyde Amendment therefore prevents application of the notice regulation in this case.

■ The Commonwealth further argues that the defendant, as the Commonwealth's "partner" in the Medicaid program, is liable to the state as a matter of common law equitable principles. This court has no legal basis on which to accept the proposition that a "partnership" between the federal government and the Commonwealth was created by the Medicaid relationship. The principles of partnership simply do not apply to the situation at hand, and the Commonwealth supplies no authority contradictory to this conclusion. The creation of a partnership is not implicit in the term "cooperative federalism." The federal government is directly responsible for enacting the Medicaid regulations that the state *must* follow if it desires to participate in the program. If the state does not wish to be bound by the Medicaid Act requirements, it is free not to participate in the program. While Congress may change the Medicaid program essentially as it sees fit, the states may only choose not to participate. Clearly, this relationship bears little resemblance to a partnership.

■ The First Circuit's injunction imposing an obligation on the Commonwealth to pay for the abortions at issue does not create a legal right in the Commonwealth's favor to obtain reimbursement from the federal government. The First Circuit's holding that the Commonwealth was obligated to continue paying for medically necessary abortions was intended to bind only the Commonwealth, not the United States. *See Commonwealth of Massachusetts,* 815 F.2d at 788–89. The Commonwealth did not pay the costs at issue here solely because of its involvement in the "federal-state partnership" created by Medicaid as plaintiff asserts. The Commonwealth paid the costs because the First Circuit ordered it to do so.

At the time the injunction was imposed, there was no dispute that the Hyde Amendment barred the federal government from funding any abortions that fell outside of the exceptions to the Hyde Amendment. The reasoning behind the First Circuit's expanded injunction was that the court was uncertain whether the Hyde Amendment altered the requirement of the Medicaid Act that participating states must fund all "medically necessary" abortions for Medicaid recipients. *See Preterm, Inc. v. Dukakis,* No. 78–1324, order at 4 (1st Cir. Aug. 7, 1978).

Thus, the question the First Circuit faced was whether the Commonwealth was required to comply with all of the terms of the Medicaid Act, and thereby shoulder the full responsibility for funding those abortions for which the Hyde Amendment prohibited federal funding, or whether the Hyde Amendment altered the Medicaid Act to excuse states from providing abortions to Medicaid recipients in cases where federal funding was unavailable. *Id.* Not in a position to make that determination at that time, the First Circuit expanded the injunction solely to "preserv[e] the status quo" until the case could be decided on the merits. *Id.*

The First Circuit later ruled that the provisions of the Medicaid Act did not apply in cases where federal funding was unavailable. *Preterm,* 591 F.2d at 134. Unfortunately for the Commonwealth, hundreds of thousands of dollars were spent complying with the earlier court order to provide abortions in cases where federal

funding was unavailable. Nevertheless, as the Grant Appeals Board concluded:

> The fundamental difficulty with the [Commonwealth's] position is that its compelling attributes constitute an equitable plea confronting an explicit statutory restriction.... While the kind of equitable relief the [Commonwealth] seek[s] may be available in another forum, we find that neither the Agency, nor this Board, has the power to overcome the Hyde Amendment's unequivocal restriction on the use of appropriated funds.

Amended Complaint, App. D at 14.

Based on a thorough review of the agency's reasoning in this case, the court concludes that the agency properly applied the governing law.

## CONCLUSION

Although this court is sympathetic to the Commonwealth's position, no legal basis exists to require federal reimbursement for the Medicaid expenditures incurred pursuant to the *Preterm* court orders. Therefore, for the foregoing reasons, the defendant's motion to dismiss is granted. The Clerk will dismiss the complaint. Each party will bear its own costs.